## TURNER *v.* WILLIAMS.

1. CONTRACTS—FRAUDS, STATUTE OF—MODIFICATION OF WRITTEN CONTRACT.

   A contract in writing may be modified after its execution by parol agreement and strict performance thereunder waived or abrogated by the parties.

2. SAME—MODIFICATION OF WRITTEN CONTRACT—CONSIDERATION.

   That the parties to a written contract considered it to their advantage to depart from a strict performance thereof would constitute a sufficient consideration for the modification.

3. SAME—ACTS OF PARTIES—INTENT.

   A departure from stipulated performance of a written contract may be predicated upon acts as well as upon an express agreement to that effect.

4. SAME—STRICT PERFORMANCE—WAIVER—EVIDENCE.

   In suit to compel defendant vendor of automobile with bond plates entitling holder to operate car as taxicab to accept balance of purchase price and surrender car, evidence *held*, to sustain finding of trial court that defendant had waived strict performance of payments to be made under written title-retaining contract.

Appeal from Wayne; Miller (Guy A.), J. Submitted April 10, 1945. (Docket No. 24, Calendar No. 42,959.) Decided June 4, 1945.

Bill by Artis Turner against Terry Williams to require acceptance of balance of purchase price of automobile and bond plate and delivery of automobile and bond plate to plaintiff. Decree for plaintiff. Defendant appeals. Affirmed.

*Frank Schwartz,* for plaintiff.

*Roxborough & Taliaferro,* for defendant.

WIEST, J.   July 2, 1942, plaintiff and defendant executed a written agreement, from which we quote the following:

"Whereas, the party of the first part has a 1941 four-door de luxe Ford automobile, bearing 1942 license,   *   *   *   with bond plates and license on same; and

"Whereas, the party of the second part has an automobile which is out of repair,   *   *   *   with bond plates #T–6 (duplicate);

"Now therefore, it is mutually agreed as follows:

"That the party of the first part agrees to sell to the party of the second part on title-retaining contract, said 4-door de luxe Ford car above described, with the license and bond plates thereon, for the sum of $500, to be paid at the rate of $25 per week, to begin July 9, 1942, until said sum of $500 is fully paid.

"That the party of the second part will have the use of said car with the bond plates and license thereon, and that he will be personally responsible for any accidents which occur in the operation of said automobile, while same is being used by the said party of the second part.

"That the party of the second part will turn over to the party of the first part, said bond plates #T–6, to be held as security for the payment of said $500 above referred to, in addition to the security of the car itself.

"That the party of the first part will give the party of the second part immediate possession of said car.

"That the party of the second part shall pay said sum of $500 the sale price of said car, within six months from the date hereof, and that if there is

any default within said six months, and if said obligation is not completely paid within six months from the date hereof, the party of the second part will forfeit all security held by the party of the first part, including said bond plates #T-6, and the party of the first part shall have the right to retain whatever amounts have been paid thereon as liquidated damages.

"That title to said car shall be and remain in the party of the first part until fully paid for."

Plaintiff paid $300 on the car under the agreement and claims he went to defendant's home on January 1, 1943, to make the final payment and found defendant was not at home. He went again a day or two later, found defendant and informed him he had come to pay the balance under the agreement, that defendant refused to take the same, claiming forfeiture by reason of the payment not having been made within the six months' period and the money theretofore paid was forfeited, as well as the bond plate. The bond plate had a particular value in that no taxicab could be operated without one and issue of others had been discontinued. Later defendant took possession of the car and retained the bond plate. Thereupon plaintiff filed the bill herein to be relieved from the forfeiture asserted by defendant and to obtain performance by defendant, alleging he was assured by defendant, after the agreement was signed, that strict time of performance would not be exacted.

Defendant insists upon right of forfeiture under the strict terms of the agreement, that the written agreement barred any subsequent parol waiver and also claims the court had no jurisdiction because, if plaintiff had remedy, it was at law.

The court held that equity had jurisdiction and, upon a finding of waiver of strict performance of the

agreement and withholding under claim of forfeiture of the bond plate and testimony in the case of waiver of strict performance by defendant, granted a decree that plaintiff deposit with the clerk of the court the balance due under the agreement and defendant should surrender to plaintiff the automobile and the bond plate.

In *Jacob* v. *Cummings*, 213 Mich. 373, we stated the rule applicable to this case. We quote:

"The written agreement, after it was signed by the defendant, could be modified, and strict performance thereunder waived or abrogated by the parties, without violating the rule against the admission of evidence to alter, vary or contradict a written agreement. The rule relates to an attack upon the writing itself, and has no reference to the right of the parties to change the method or manner of performance, or waive rights or remedies thereunder by parol.   *   *   *   If the parties considered it to their advantage to depart from strict performance of the agreement, that would constitute a sufficient consideration.

"A departure from stipulated performance can be predicated upon acts as well as upon an express agreement to that effect."

The testimony in the case sustains the findings by the circuit judge and the decree is affirmed, with costs to plaintiff.

STARR, C. J., and NORTH, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.